# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

JAMES CUDAK,

                                        Plaintiff,

        vs.                                                    9:14-CV-1047
                                                               (TJM/ATB)

THOMAS GRIFFEN,

                                        Defendant.

JAMES CUDAK, Plaintiff pro se
MARIA LISI-MURRAY, Asst. Attorney General for Defendants

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

        This matter has been referred to me for Report and Recommendation by the

Honorable Thomas J. McAvoy, Senior United States District Judge, pursuant to 28

U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).  In this civil rights complaint,

plaintiff alleges that defendant failed to accommodate plaintiff's disability in violation

of the Americans with Disability Act ("ADA")[1] and Section 504 of the Rehabilitation

Act ("Rehabilitation Act")[2] because plaintiff, who is legally blind, was denied the use

of a digital player while he was incarcerated at Eastern Correctional Facility

("Eastern").[3] (Complaint ("Compl." at CM/ECF p.6) (Dkt. No. 1).

---

        [1] 42 U.S.C. § 12101 et seq.

        [2] 29 U.S.C. § 794.

        [3] The original complaint contained other claims and other defendants. (Dkt. No. 1).  However,
by order dated December 30, 2014, Senior Judge McAvoy dismissed all defendants except Thomas
Griffen, former Superintendent of Eastern and dismissed all claims except for the denial of a digital
player. (Dkt. No. 7).

Presently before this court is the defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 22). Plaintiff has not responded in opposition to the motion. For the following reasons, this court agrees with defendant and will recommend dismissal of the complaint.

## DISCUSSION

### I. Facts

Plaintiff alleges that he is legally blind, which defendant does not contest for purposes of this motion. (Compl. at 6, Def.s' Statement of Material Facts ("SMF") ¶ 7 (Dkt. No. 22-4)). In his complaint, plaintiff claims that for eighteen months[4] while he was incarcerated at Eastern, he was denied the "right to read via audio player." (Compl. at 6). Plaintiff alleges that in 2012, the Library of Congress issued a statement that it was going to transition all of its books on "cassette" to digital format, and that by 2013, there were no tape cassettes available. (*Id.*) Plaintiff claimed that the officials at Eastern were aware of this "transition" because the facility purchased digital players, but refused to distribute them to the visually impaired inmates. (*Id.*) Plaintiff stated that he was denied his "basic right to read via audio books," and that this was "part of [his]

---

[4] The time period that plaintiff was denied the use of these digital audio players is a little unclear. Plaintiff's complaint was filed August 25, 2014. (Dkt. No. 1). In his complaint, plaintiff first states that his right to read "via audio player" was denied in May of 2014, but he later states that "[f]or 18 months now I have been denied the basic right to read via audio books." (Compl. at 6). If that statement is true, then the relevant date was in February of 2013. Finally, during his June 15, 2015 deposition, plaintiff stated that the last time he was able to obtain a book from the Library of Congress was April of 2012, then he says June of 2012. (Pl.'s Dep. at 18-19) (Dkt. No. 22-3). Plaintiff's grievance was filed on June 5, 2014. (Lisi-Murray Decl. Def.s' Ex. C) (Dkt. No. 22-3 at CM/ECF p.43). Plaintiff was transferred to Woodboune on December 22, 2014. (Def.s' SMF ¶ 15) (Plaintiff testified that he was transferred on December 18, 2014. (Pl.'s Dep. at 7). Notwithstanding this lack of clarity, the period of time that plaintiff alleges he was denied this reading instrument is not relevant to this court's recommendation.

Reasonable Accommodations [sic]" under the ADA. (*Id.*)

## II.   Summary Judgment

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006).  "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment.  *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial.  *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant.  *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin v. Goord*, 467 F.3d at 272.

To be sufficient to create a "factual issue," in the context of a summary judgment motion, an allegation in an affidavit or verified complaint must not be conclusory or overly general. *Smith v. Woods*, 9:03-CV-480 (DNH/GHL), 2006 WL 1133247, at *3 & n.10 (N.D.N.Y. Apr. 24, 2006). Even where a complaint or affidavit contains specific assertions, the allegations "may still be deemed conclusory if [they are] (1) 'largely unsubstantiated by any other direct evidence' and (2) 'so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint.'" *Id.,* 2006 WL 1133247, at *3 & n.11 (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 554-55 (2d Cir. 2005) ("While it is undoubtedly the duty of district courts not to weigh the credibility of the parties at the summary judgment stage, in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether 'the jury could reasonably find for the plaintiff,' . . . and thus whether there are any "genuine" issues of material fact, without making some assessment of the plaintiff's account.")).

## III. ADA/Rehabilitation Act

### A. Legal Standards

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "To assure that those

4

requirements are met, 'reasonable accommodation' may have to be provided to the qualified individual." *Harris v. Mills*, 572 F.3d 66, 73 (2d Cir. 2009) (citations omitted). Similarly, section 504 of the Rehabilitation Act declares, in relevant part, that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

Title II of the ADA and section 504 are applicable to inmates in state prisons. *Allah v. Goord*, 405 F. Supp. 2d 265, 274 (S.D.N.Y. 2005). In order to state a claim under the ADA, the inmate must establish that: "(1) he or she is a 'qualified individual with a disability'; (2) he or she is being excluded from participation in, or being denied the benefits of some service, program, or activity by reason of his or her disability; and (3) the entity [that] provides the service, program, or activity is a public entity." *Id*. (citations omitted).

The standards for an inmate's claim under section 504 are generally the same as an ADA claim. *See Id*. at 113 n.2 (the most significant distinction between the two statutes is that Title II of the ADA applies to all state and municipal governments, while section 504 applies only to those government agencies or departments that accept federal funds, and only those periods during which the funds are accepted); *Harris v. Mills*, 572 F.3d at 73. At least for a Title II ADA claim sounding in equal protection,[5]

---

[5] Plaintiff's claim that he is being treated differently because of his disability sounds in equal protection. The Equal Protection Clause of the Fourteenth Amendment provides that the government shall treat all similarly-situated people alike. *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (citing *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).

the plaintiff may also need to establish that the deprivation of a program or activity was "motivated by discriminatory animus or ill will due to disability." *Garcia v. S.U.N.Y. Health Science Center of Brooklyn*, 280 F.3d 98, 112 (2d Cir. 2001).[6]

## B.    Application

Defendant does not deny that plaintiff was denied the use of a digital player during the time that he was incarcerated at Eastern. Although plaintiff has alleged that the defendants denied him (and other legally blind inmates) digital players, he does not claim that the deprivation was motivated by animus or ill will, and in any event, cannot establish all the requirements for either a violation of the ADA or the Rehabilitation

---

[6] Title II of the ADA contains a section specifically stating that a state shall not be immune under the Eleventh Amendment from a court action for a violation of the ADA. 42 U.S.C. § 12202. *Garcia* held that, for this abrogation of sovereign immunity to comport with Congress's authority to enforce the Fourteenth Amendment by appropriate legislation, under section 5 of that amendment, Title II monetary claims against the state could be maintained only if the plaintiff established "discriminatory animus or ill will based on the plaintiff's disability." 280 F.3d at 111. Since the *Garcia* ruling, two Supreme Court decisions have called into question whether the "discriminatory animus or ill will" standard is still valid. *See Bolmer v. Oliveira*, 594 F.3d 134, 146-48 (2d Cir. 2010) (citing cases) (standard does not apply to an ADA claim based solely on a substantive due process objection to involuntary commitment, as opposed to an Equal Protection claim). Specifically, in *Tennessee v. Lane*, 541 U.S. 509 (2004), the Supreme Court allowed a private cause of action for damages under Title II where the plaintiff claimed that his right of access to the courts had been violated. Subsequently, in *United States v. Georgia*, 546 U.S. 151, (2006), the Court permitted a private cause of action for conduct that "actually violates the Fourteenth Amendment." 546 U.S. at 159. In doing so, the *Georgia* decision left it for lower courts to determine, on a claim-by-claim basis, whether the ADA's purported abrogation of sovereign immunity was valid as to misconduct that violated Title II, but did not violate the Fourteenth Amendment. 546 U.S. at 158-59. District courts in this Circuit "have come to different conclusions as to whether *Garcia* is still good law in light of *Lane and Georgia*." *Cole v. Goord*, 05 Civ. 2902, 2009 WL 2601369, at *7 (S.D.N.Y. Aug. 25, 2009) (citing cases). *See also Sharif v. Coombe*, 655 F. Supp. 2d at 304 ("after a close reading of *Garcia*, this Court concludes that Garcia's requirement that a Plaintiff demonstrate 'animus or ill will' to recover monetary damages under Title II survives those recent Supreme Court decisions"). The Second Circuit has not ruled on the question. *Bolmer v. Oliveira*, 594 F.3d at 148 ("Whether or not *Garcia* survives *Lane* and *Georgia*, a question we do not reach . . . ."). Because this court is recommending summary judgment with respect to plaintiff's ADA claim for other reasons, I need not "delve into [the] deep constitutional waters," relating to the legal issues implicated by *Garcia*, *Lane*, and *Georgia*. *See Cole v. Goord*, 2009 WL 2601369, at *7.

Act. The defendant has always been consistent[7] in stating that the digital players were initially denied to inmates for security reasons. In support of his motion for summary judgment, defendant has filed the affidavit of Joseph Bellnier, the Deputy Commissioner ("DC") for Correctional Facilities for the Department of Corrections and Community Supervision ("DOCCS"). (Bellnier Aff.) (Dkt. No. 22-2). DC Bellnier states that legally blind and severely visually impaired inmates have had access to "tape players and books on tape for several decades through access to New York State Talking Book and Braille ["TBB"]." (Bellnier Aff. ¶ 5). Correctional facilities, such as Eastern and Woodbourne, that are designated for inmates with "sensorial disabilities" assist inmate to access TBB. (*Id.*)

DC Bellnier states that plaintiff did not have access to a digital player at the time he was incarcerated at Eastern because DOCCS discovered that the use of the digital book players presented a security concern. (Bellnier Aff. ¶ 10). More specifically, the digital players had functioning USB ports, and USB drives are "small and portable and easily hidden" and could contain information advocating "violence, drug trade, the manufacture of weapons or escape plans . . . ." (*Id.* ¶ 11). DC Bellnier states that if a USB storage device were smuggled into a facility, it would pose a risk if the inmate had access to a device – such as a digital player – which could read the materials on the storage device. (*Id.*)

---

[7] When plaintiff filed his grievance, he was informed that the players posed a security risk and that the department was in the process of developing a policy regarding their use. (Def.'s Ex. C).

DC Bellnier states that security[8] issues are of great concern when introducing new technology into correctional facilities, and at the time that plaintiff was requesting access to the digital player, DOCCS was devising a method of disabling one of its two USB ports. (Bellnier Aff. ¶ 12). DOCCS was also working on a method to anchor the USB drive to the digital player so that it could not be removed without the assistance of a staff member. (*Id.*) At the time that DC Bellnier signed his affidavit on October 29, 2015, he stated that DOCCS had finalized a policy regarding the use of "talking books in digital form in cells," and he expected it to be implemented "within the next two weeks," and it was expected that the digital players would be disseminated over the "next few weeks to correctional facilities, including Eastern . . . and Woodbourne . . . ," where plaintiff was then located. (*Id.* ¶¶ 13-14). DC Bellnier stated that plaintiff would have access to such a device within "the next month or so." (*Id.* ¶ 15). DC Bellnier states, even though plaintiff was not given access to a digital player during his incarceration at Eastern, he was provided "reasonable accommodation" for his disability because he had access to a large selection of audio books in cassette format. (*Id.* ¶ 17).

DC Bellnier also noted that as of December 2013, although plaintiff could not have the use of a digital player in his cell, he had the use of a digital player under supervision in the resource room, class room, or library.[9] (Bellnier Aff. ¶ 17). DC

---

[8] As long as a restriction is rationally related to a legitimate penological purpose such as security or safety, it is valid even if it infringes on an inmate constitutional rights. *See Turner v. Safely*, 482 U.S. 78, 89 (1987).

[9] The court notes that this availability was not mentioned in the 2014 response to plaintiff's grievance or in any of the grievance appeals, but this fact is also not relevant because plaintiff still had

Bellnier has attached a December 16, 2013 Memorandum that he wrote to the Superintendents of ten correctional facilities, entitled "Reasonable Accommodation for Blind and Visually Impaired Inmates." (Bellnier Aff. Ex. 1 at 1). The memorandum authorized the superintendents to allow blind and visually impaired inmates "access to a digital player while under supervision in areas such as resource rooms, libraries and classrooms." Attached to the memorandum was a "description of the specific approved player." (Bellnier Aff. Ex. 1 at 2-5). The attachment includes a photograph of the player and the description states that the TBB "has modified a number of digital players for the exclusive use of incarcerated offenders/patrons. These modifications were applied to meet the Department's security requirements." (*Id.* at 3-5).

At his deposition, plaintiff conceded that during the time in question, he did have access to a cassette player for listening to audio books, but complained that it was "obsolete" and that there were insufficient numbers of books available to him because of the discontinuance of the cassette system. (Pl.'s Dep. at 16-17). Plaintiff initially testified that there were "exactly" 35 tapes, but then he stated that there were "only 100 books, and that 100 books may or may not be what I want to read." (T. 17, 29). It is clear that plaintiff's problem is that he did not have the most advanced technology, and that he did not care for the books that were available to him. Thus, while defendants concede for purposes of this motion, that plaintiff is a qualified individual with a disability, and defendant is public entity, plaintiff was not excluded from participation in, or denied the benefits of any service, program, or activity by reason of his blindness.

---

access to the cassette player and books on tape. (Def.'s Ex. C).

If the "benefit," "service," or "program" is the availability of books to read, it is clear that the plaintiff was not denied this benefit, service, or program at all, let alone based on his disability. While he may not have had access to as many books as inmates who could see, the valid security issue prevented him from having unfettered access to the digital player until DOCCS obtained players that met the Department's security requirements. As demonstrated by the Bellnier Affidavit, it took longer to develop a policy and obtain the appropriate equipment, but DOCCS was ultimately able to make such players available, first under supervision, and later, for in-cell use.

The defendant has shown that plaintiff was denied the player for reasons *unrelated* to his disability and that he had access to other means of listening to books. To survive summary judgment under the ADA and the Rehabilitation Act, the plaintiff must produce "some evidence that supports an inference that the plaintiff was treated differently from non-disabled individuals because of his disability." *Parks v. Blanchette*, No. 3:09-CV-604, 2015 WL 6755208, at *42 (D. Conn. Nov. 4, 2015) (citing *Doe v. Pfrommer*, 148 F.3d 73, 83-84 (2d Cir. 199) (affirming the grant of summary judgment because the plaintiff was challenging the quality of the services he received rather than any discrimination against him because of his disability)).

Plaintiff has not responded to the defendant's summary judgment motion.[10] Based on the uncontested evidence presented by defendant, including the affidavit of DC Bellnier, and plaintiff's own testimony at his deposition, this court concludes that there is no genuine issue of material fact, and finds that no rational jury could decide in

---

[10] Plaintiff was clearly warned of the consequences of a failure to respond to a summary judgment motion. (Lisi-Murray Decl., Ex. A) (Dkt. No. 22-3).

favor of the plaintiff. Thus, summary judgment is appropriate in favor of defendant.[11]

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendant's motion for summary judgment (Dkt. No. 22) be **GRANTED** and the complaint **DISMISSED IN ITS ENTIRETY**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: March 14, 2016

Hon. Andrew T. Baxter
U.S. Magistrate Judge

---

[11] In addition, to the extent that plaintiff was seeking injunctive relief, his transfer out of Eastern and the current availability of the digital player renders moot any request for injunctive relief. When the problem sought to be remedied has ceased, and where there is no reasonable expectation that the wrong will be repeated, the claim is moot and may be dismissed because the court lacks subject matter jurisdiction. *Andino v. Fischer*, 698 F. Supp. 2d 362, 380 (S.D.N.Y. 2010) (citing *Fox v. Bd. of Trs. of State Univ. of N.Y.*, 42 F.3d 135, 140 (2d Cir. 1994)). Plaintiff's transfer out of the facility will generally moot any claims for declaratory and injunctive relief against officials from that facility. *Id.* (citing *Verley v. Wright*, No. 02 Civ. 1182, 2007 WL 2822199, at *9 (S.D.N.Y. Sept. 27, 2009)).